IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 21-CR-00618-2 |
| ) | |
| ) | |
| CHARLES LIGGINS, a/k/a ) | |
| "C Murda," KENNETH ROBERSON, ) | |
| a/k/a "Kenny" and "Kenny Mac" ) | |
| TACARLOS OFFERD, a/k/a "Los," ) | |
| CHRISTOPHER THOMAS, a/k/a ) | |
| "C Thang," and ) | |
| MARCUS SMART, a/k/a "Muwop" ) | |

**DEFENDANT ROBERSON'S CORRECTED
RESPONSE TO GOVERNMENT'S MOTION
TO EXCLUDE PROPOSED EXPERT LANCE WILLIAMS**[1]

NOW COMES the Defendant, KENNETH ROBERSON, responding to the Government's Motion to Exclude Proposed Expert Lance Williams as follows:

**BACKGROUND**

On October 9 defendant Roberson disclosed a "gang expert." The expert was retained after a review of ongoing, and voluminous discovery, key parts of which were received in the weeks preceding the request. The request had been initiated by appointed counsel in mid-September, and the work was delayed until after approval (October 3). The disclosure was then made within six-days.[2]

---

[1] The corrections are to citations, font shading, and some punctuation.

[2] At the time the request was initiated, one of defendant's counsel was traveling in the middle east. He returned on October 7, and spent October 8 at the hospital with his father, who passed away the next day. Because the Court had, when approving the request, placed

The Government complains that Defendant Roberson disclosed the expert witness too late in the game, notifying the Government on October 9, 2023, and claiming the disclosure was not made until "the evening before trial." It also complains that the disclosure is incomplete, and the evidence is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). The Government does not claim surprise, prejudice, or ever explain why, given the anticipated length of the trial before the defense case begins and the regularity with which they call a similar type of expert, they would not have an adequate opportunity to prepare or call a rebuttal expert.

In the end, none of the Government's concerns have any merit and the witness ought to be allowed to testify.[3]

**TIMING**

As far as the timing of the disclosure, it is true that Defendant's disclosure was made on October 9, after the deadline set by the Court for all defendants. Yet the Court also approved the request after the deadline, implicitly approving the timing. That is understandable and appropriate; there is a level of uncertainty to any trial, and deadlines are never absolute.

---

an October 9 deadline on disclosure, counsel made sure to complete it, irrespective of his personal situation.

[3] An amended disclosure, with the expert's signature, is attached. The only change is the addition of the expert's signature, there are no substantive changes. An updated CV is also provided. Both are attached as group Exhibit A.

A trial is fluid, and the exchange of information is ongoing. The Government, almost daily, dumps large amounts of discovery on the defense. The defense must then review the material, subject to the same time constraints as the Government, and without the abundant assistance and support available to the Office of the United States Attorney. In fact, the continuing production of new Government discovery (that includes media posts and other photos depicting Mr. Roberson and others in what the Government will claim are gang-related poses and garb) and witnesses (including Mr. Roberson's friends Lyndrea Doumas and Eddie Bass) were the primary motivation for defense counsels' request for the services of a gang expert. It was the review of Government discovery provided close to the start of jury selection that prompted defendant's recognition of the need for an expert in the area.

Beyond, it is not true that it was on the eve of the trial opening. Trial evidence has not yet begun, with the Court targeting November 1, 2023, for opening statements. "Thus, the committee notes make clear that the swearing-in of the jury serves as the 'start of trial.'" *United States v. Nicholson*, 716 F. App'x 400, 414 (6th Cir. 2017) (discussing disclosure of mental health expert under Fed. R. Crim. P. 12.2).

The Government has estimated that its case-in-chief will take six to nine weeks, meaning the soonest this expert would be testifying is mid-December 2023, more than two (2) months after the disclosure. The Government can hardly complain that this is not enough time to ruminate and frame any examination or to obtain a rebuttal expert, if needed. After all, the matters disclosed, while they may not be within the penumbra of the average juror's knowledge are well-known by the

3

Government. They are the kind of matters that the Government routinely presents through its own experts. *See, e.g.*, *United States v. Robinson*, 18 CR 758; *United States v. Chester*, 13 CR 774; *United States v. Spann*, 17 CR 611; and *United States v. Lee*, 19 CR 641. Each was a RICO case tried in this district.

**EXCLUSION**

The Government suggests that exclusion is the remedy because "the lateness of Roberson's disclosure accordingly deprives the Government of any meaningful opportunity to review, research, and respond to the disclosure before trial." Dkt. 341, p. 4. But that is not the threshold inquiry, meaning the Government's request suffers from a more fundamental problem.

The Defendant's obligation to disclose experts turns on a request from the Government and a corresponding request from the Defendant. Here, the Defendant did not request disclosure from the Government under Rule 16(a)(1)(g). "(C) *Expert witnesses.* (i) Duty to Disclose. At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, *if: the defendant requests disclosure under (a)(1)(G) and the government complies." Fed. R. Crim. P. 16.* (italics not in original)

The condition precedent does not exist; the defendant did not request disclosure. Indeed, the disclosure by the defense is purely gratuitous. The

4

Government ignores the triggering condition spelled out in Fed. R. Crim. P. 16(a)(1)(g).

Nor is the Government without "meaningful opportunity" to respond to the expert. At the risk of sounding flippant, it would have taken the Government less time to mount a response to the witness than it has taken to draft its motion. Otherwise, the unsupported complaint that the Government cannot "respond" to Mr. Roberson's disclosure fails to provide any explanation. Additionally, the Government knows who to call in rebuttal if it wishes; it would choose from the same witness(es) it typically calls in many cases like this, an officer from the Chicago Police Department.

Beyond that, barring the witness' testimony would be a draconian sanction, hardly warranted. After all, the Government has not claimed any meaningful prejudice, and did not explain why on this common area of expert testimony it will be unable to seasonably respond. The remedies are provided in Rule 16(d)(2), "(2) *Failure to Comply.* If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." *Fed. R. Crim. P. 16*. While exclusion is always a possible remedy, it is rarely the proper remedy. *See United States v. Duvall*, 272 F.3d 825 (7th Cir., 2001) ("The list of remedies available include granting a continuance…").

5

Given the need for the expert testimony, the evolving state of discovery, and the amount of time between the disclosure and the anticipated time the witness would be called (more than two (2) months), exclusion would be an abuse of discretion. *United States v. Ledbetter*, 920 Ill.3d 338 (6th Cir. 2019) (late disclosure of an expert did not seriously affect the fairness of the proceeding). Here, without explanation, the Government only requests the most severe penalty, without requesting the Court to consider the others.

As for the cases the Government has cited, none of them are on point. In *United States v. Buchbinder*, 796 F.2d 910 (7th Cir., 1986), the court was considering a violation of Fed. R. Crim. P. 12.2(b) (a different rule), which required disclosure by a Defendant of the intent to introduce expert testimony about his mental condition. Defense counsel had failed to provide an expert psychological report, something that's far more unique than the testimony offered here. Beyond that, the court allowed other testimony about the Defendant's mental health that the jury was able to consider. In *United States v. Phellil*, 678 F.Supp.2d 713 (N.D. Ill. 2009), the court did not exclude a witness because of a late disclosure, but rather "barred trial counsel from eliciting testimony from Schwid during the defense's case-in-chief that concerned topics beyond the scope of the pretrial disclosure." 678 F.Supp.2d at 35. Finally, in *United States v. Causey*, 748 F.3d 310 (7th Cir., 2013), the Court excluded expert testimony where *no* disclosure had been made.

6

In the end, the Government does not explain why they are prejudiced by the timing of the disclosure, why disclosure was even required in the first instance, or make a case for why exclusion would be the proper remedy.

### ***DAUBERT***

The Government also raises a *Daubert* challenge to the testimony, but it does so without asking for a hearing. For that, it speaks with a forked tongue. The expert disclosure provided to the Government is largely taken from the disclosures typically offered by the Government before presenting a gang expert. (The Government disclosures will be provided to the Court upon request). Thus, the Government's claims that Defendant's disclosure lacks sufficient details for the Government or the Court to fully analyze it, is difficult to understand. Dkt. 341, p. 11. The same is true when they claim the disclosure comes too late for a *Daubert* hearing

The Government does not argue a *Daubert* challenge to the testimony based on the subject matter of Dr. Williams' expected testimony; how gangs are structured and how they operate are areas of expertise clearly outside the knowledge of the average juror. The Government's motion does not challenge whether the subject matter is appropriate for expert testimony, and the Government makes no claim that gang structure, organization and culture are areas within the average juror's knowledge. The propriety of expert testimony on a matter so outside the purview of the average juror is an issue the Government does not raise. In other words, there is no dispute the area is ripe for expert testimony. Yet, the Government seems to argue that the jurors should hear only evidence about gangs from its own lay witnesses.

The admission of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*. The Supreme Court in *Daubert* made it clear that an expert by "knowledge, skill, experience, training, or education" may offer opinions if the

8

expert's "scientific, technical, or other specialized knowledge" would "help the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 588-89 (1993).

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Under Rule 702, "the rejection of expert testimony is the exception rather than the rule," *Id.* (Advisory Note, 2000 amends.), and the Rule's inquiry is a "flexible one." *Daubert,* 509 U.S. at 594-95; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) *(Daubert* analysis applies to non-scientific expert testimony).

A court examining a *Daubert* challenge is a gatekeeper, not an arbiter of truth: "the key to the gate is not the ultimate correctness of the expert's conclusions. Instead it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). *Daubert* requires the Court to evaluate "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (emphasis in original); *see*

9

*also Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). In other words, expert testimony must be presented by a qualified witness, be "grounded in the methods and procedures of science," and "assist the trier of fact to understand or determine a fact in issue." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (quoting *Daubert*, 509 U.S. at 590-91). "The party seeking to introduce the expert witness testimony bears the burden of demonstrating that the expert witness testimony satisfies the standard by a preponderance of the evidence." *Id.* at 673.

Still, "the district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony." *Stollings v. Ryobi Techs., Inc.,* 725 F.3d 753, 765 (7th Cir. 2013); *see also Lapsley v. Xtec, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) ("A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy.") "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact," and the focus of the *Daubert* inquiry should remain on the principles and methodology, not on the ultimate opinions reached by the expert. *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). If an opposing party intends to challenge the factual basis of the expert's opinion, the appropriate method is through cross-examination, not exclusion. *Walker v. Sao Line R.R. Co.,* 208 F.3d 581,586 (7th Cir. 2000).

As noted above, this type of gang expert testimony is routinely offered by the Government in criminal prosecutions. "We find no abuse of discretion in the district

court's decision to permit Cronin to testify as an expert. The average juror is unlikely to be familiar with the operations of narcotics traffickers or of street gangs. *See, e.g., United States v. Anderson*, 61 F.3d 1290, 1297 (7th Cir.) (drug trafficking), *cert. denied*, 516 U.S. 1000, 116 S. Ct. 543, 133 L. Ed. 2d 446 (1995); *United States v. Johnson*, 28 F.3d 1487, 1496-98 & nn. 9, 10 (8th Cir. 1994) (drug trafficking and gangs), *cert. denied*, 513 U.S. 1098, 115 S. Ct. 768, 130 L. Ed. 2d 664, (1995), and *cert. denied*, 513 U.S. 1195, 115 S. Ct. 1262, 131 L. Ed. 2d 141 (1995). Cronin's testimony supplied the jury with useful background concerning the history and structure of the TVLs, as well as with their involvement in narcotics activities." *United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002). Courts regularly recognize the need, "the average juror is unlikely to be familiar with the kinds of tattoos associated with the members of Surenos gang, and with gang culture generally. Therefore, the Court finds that Malkins' testimony will aid the jury's determination of whether plaintiffs were gang members, and how that affiliation may have influenced their interaction with the defendant officers." *Martinez v. City of Chicago*, 2009 U.S. Dist. LEXIS 98920 at *4-5 (N.D. Ill., October 23, 2009). *See* also *Davis v. Ryker*, ("The testimony of gang activity expert or otherwise, is probative and relevant in helping jury understand the motive of the shooting as discussed in the above paragraph.") 2007 WL 1958581 (N.D. Ill., June 29, 2007).

As noted above, the gang expert disclosure here is substantially similar to those the Government normally offers; it includes proposed testimony on street gangs generally in the Northern District of Illinois, their structure, how they operate, and

11

how the culture surrounding them has changed over time, the history of the gangs, the various gangs that exists, their clothing, their use of social media, names, and criminal activity. See, for example, the testimony of CPD Sgt. Kennedy, in *United States v. Robinson*, 18 CR 758, attached as Exhibit B. In *Robinson*, the Government's gang expert was allowed to testify "about how criminal street gangs of Chicago work, especially gangster disciples, black disciples, and their small counterparts" (pg. 461), the existence of smaller factions or subsets within the gang (pg. 463), and more specifically about the Evans Mob (pgs. 466-475). The gang expert's testimony in *Robinson* is no different in type than that of the Defendant's gang expert here.

As for the Government's complaint that there is no time to conduct a *Daubert* hearing over the next six to nine weeks, they do not explain why that is the case, nor does the Government ask for a Daubert hearing or explain why it is needed. If the Government wants a *Daubert* hearing, it should ask for one. If the Government wishes to request a *Daubert* hearing challenging an area of expertise on which it routinely presents testimony, it is up to the Court to decide whether the request has merit and whether to schedule a hearing.

**THE SUBSTANCE**

The Government concedes that "Williams' resume demonstrates historical familiarity with certain gangs…but not particularized expertise with the charged enterprise, O-Block." Dkt. 341, p. 11. It misses the point.[4] An expert need not be a member of or opposed to the charged entity to opine on street gangs, their structure, and the other aspects of the gang culture. Indeed, experts routinely do not have hands-on experience with their subjects of expertise. Rather, experts offer their opinions based on research and/or experience. That is why the Government can call CPD officer(s) as gang experts. If the Government is not satisfied with the level of Dr. Williams' particularized experience related to alleged Black Disciple subset O-Block, it can cross-examine on that issue. But the Government's claim does not affect admissibility.

While the Government argues that Dr. Williams is somehow unqualified to opine in these areas, it never meaningfully challenges his qualifications or his resume. He is a Ph.D., and a professor of Urban Community Studies. He has 30 years of professional experience, and over 50 years of personal experience with street gangs. He grew up in a poverty-stricken Chicago neighborhood, providing him with a "unique vantage point as a scholar who studies, rights and lectures on street gangs." Dr. Williams has authored scholarly articles and books related to Chicago street gang organization, structure, and operations. He has, for over 20 years, studied the Gangster Disciples (an alleged umbrella organization which the Government claims

---

[4] Dr. Williams CV is replete with expert engagements related to multiple Chicago street gangs, including the Black Disciples).

FBG Duck belonged), the Black Disciples, and a plethora of other Chicago gangs. (The Government's theory is that O-Block is a subset of the Black Disciples). He has assisted and/or testified in over two-dozen cases, and his opinions have never been barred.

Beyond, the Government misplaces the burden. They object to this evidence, yet they fail to specify why the testimony would not be probative or helpful to the jury. Instead, the Government incorrectly argues that Roberson must establish that it is. The Government makes no effort to distinguish the vast body of law finding that the nature and structure of gangs, and how they operate, is far beyond the knowledge of the average juror. The Government fails to differentiate this case from the myriad criminal prosecutions where gang expert testimony is routinely admissible.

While on the one hand arguing that Dr. Williams' opinion is too general, the Government simultaneously objects to the specific testimony Defendant intends to offer about O-Block and Dipset. The Government asserts that there will be adequate testimony from prosecution witnesses on these subjects and suggests that the defense can call lay-witnesses instead of an expert. Again, the Government misses the mark. If the evidence is relevant, Mr. Roberson should be able to present his evidence in whatever form he chooses. The law does not require Mr. Roberson to call a lay witness rather than an expert witness simply because the Government does not like the method of presentation. The Government's protest is like arguing that a fingerprint expert should be excluded because the proponent can call as a lay witness the person

who saw the subject touch the glass at issue with their hand. Of course, the proponent of the fingerprint evidence could call both witnesses, an expert and a lay witness.

## **GANG CULTURE EXPERTISE**

The Government's last challenge is to what they characterize as Dr. Williams' "cultural expertise" opinion. Defendant Roberson intends to solicit from Dr. Williams why gang activity is/was prevalent in the Parkway Gardens, and more generally, in poor communities of color. The testimony will assist the jurors, many if not all of whom are unfamiliar with these neighborhoods, with the dynamics that exist, the lack of opportunity and education, and why individuals join gangs. He also will be able to explain to the jurors how gangs are now geographically organized and of the interplay between gang culture and rap music, and the differences among various gang and neighborhood "clicks." Each of these are areas with which the average juror is likely unfamiliar, and learning about each area will assist the jury to better understand and contextualize the evidence presented.

Once again, the Government's challenge is general and seemingly argues that the evidence is not relevant. This argument is meritless; the Government's case-in-chief is comprised almost exclusively of witnesses who will offer evidence on most of these very same topics. Mr. Roberson is constitutionally entitled to call witnesses who will present evidence consistent with his innocence. That the Government doesn't like the evidence challenging its narrative is not sufficient reason to exclude otherwise relevant expert testimony.

15

**CONCLUSION**

This Court should deny the Government's request in its entirety. While the disclosure may have been provided past the Court's deadline, the Defense was compelled to do so upon the review and synthesis of additional discovery by the Government, and the Government does not claim any prejudice. Moreover, Dr. Williams' expert opinions are all entirely admissible.

                                                                Respectfully submitted,

                                                                KENNETH ROBERSON, Defendant

                                                                By:*s/ Steven Greenberg*
                                                                                One of His Attorneys

**Steven Greenberg**
**GREENBERG TRIAL LAWYERS**
**53 W. Jackson Blvd., Suite 315**
**Chicago, Illinois 60604**
**(312) 879-9500**
*Steve@GreenbergCD.com*

**Cheryl T. Bormann**
**Law Offices of Cheryl Bormann**
**53 W. Jackson Blvd., Suite 315**
**Chicago, IL 60604**
**(312) 588-5011**
*Cheryl.T.Bormann@gmail.com*